Thomas A. KIPPS, Appellant,

v.

John EWELL et al., Appellees.

No. 75–1494.

United States Court of Appeals, Fourth Circuit.

Submitted Dec. 10, 1975.

Decided March 3, 1976.

---

**3.** 29 U.S.C. § 654(a)(1) (1970).

**4.** *Id.*

Thomas A. Kipps, appellant pro se.

W. W. Wharton, Harrisonburg, Va., for appellees.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Following his acquittal of a state murder charge, Thomas A. Kipps initiated a complaint pursuant to 42 U.S.C. § 1983 against the defendants for violation of his civil rights in connection with the murder prosecution. Defendant Ewell prosecuted the case against Kipps as Commonwealth Attorney for Warren County, Virginia. Defendant Keyser was sheriff of the county during the investigation and prosecution of Kipps, and defendant Williams was the deputy who handled the investigation. Kipps' complaints include the following: 1) the defendants caused him to be confined for one day before he was arrested;[1] 2) the defendants combined to cause Kipps' arrest; 3) the defendants released allegedly inflammatory statements and a picture to the press. On the defendant's motion to dismiss and after affording Kipps an opportunity to file reply affidavits and depositions, the district court dismissed Kipps' case.

[1]. At the time of the murder and of Kipps' arrest he was participating in a state prison work-release program. He had been imprisoned for a narcotics violation, but had qualified under the local prison rules for the work-release program. If Williams had not requested the prison officials to detain Kipps, he would have been released during the day to go to his job. Kipps has complained that the confinement constituted cruel and unusual punishment.

The motion to dismiss for failure to state a claim for which relief can be granted may be treated as a motion for summary judgment when· matters outside the pleadings are considered by the court. Fed.R.Civ.P. 12(b).

■ Because of the public interest in the forthright enforcement of criminal laws, the defendants have some protection from retaliatory suits. Defendant Ewell, as Commonwealth Attorney, is immune from any civil action connected with his prosecuting function. *Weathers v. Ebert*, 505 F.2d 514, 515 (4th Cir. 1974), appeal pending, 424 U.S. 975, 96 S.Ct. 1480, 47 L.Ed.2d 745. Defendants Keyser and Williams enjoy no immunity from suit, but they may avail themselves of the defense of good faith and probable cause in a § 1983 action. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Although this is an affirmative defense which may be properly raised before a jury, *id.*, summary judgment may be rendered if pleadings and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). When a motion for summary judgment is properly supported by affidavits, the adverse party may not rest upon the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *cf. Barnes v. Dorsey*, 480 F.2d 1057, 1061 (8th Cir. 1973).[2]

■ Kipps has not offered any reason why quasi-judicial prosecutorial immunity should not bar suit against Ewell for his actions in prosecuting him after he was arrested. Instead he has attempted to avoid the immunity issue by relying upon the fact that Ewell consulted with the other defendants about Kipps' arrest before it occurred. When Williams first told Ewell that Kipps was suspected in the murder case, Ewell suggested several additional matters that he believed should be investigated. After these suggestions were followed, Ewell reviewed the evidence against Kipps and advised Williams that probable cause existed for Kipps' arrest. Kipps argues that this prearrest consultation was not a part of the prosecutorial function and thus was outside the scope of the prosecutorial immunity. *Cf. Hampton v. City of Chicago, Cook County, Illinois*, 484 F.2d 602 (7th Cir. 1973), *cert. denied* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1973).[3] It is not necessary to determine whether these consultations were anything other than the traditional duty of the local prosecutor, since the defense of probable cause and good faith would protect Ewell in this case even if he were to be judged by the standards for police rather than prosecutorial conduct.

■ In his complaint, Kipps alleged that probable cause was lacking for his arrest because it was based on the insufficiently credible statement of a fellow inmate, Jesse Armentrout. Kipps does not deny that Armentrout had told the police that Kipps admitted committing the murder and showed Armentrout the purported murder weapon; he asserts only that Armentrout's statement lacked credibility. Although given the opportunity to do so by the district court, Kipps furthermore has not contradicted the defendants' affidavits that the prison camp confinement and subsequent arrest were premised upon information from other sources that Armentrout had a close association with Kipps as they traveled together daily to their work-release jobs, that Kipps had been seen with the murder victim within days of the estimated time of death, and that Kipps had stated to several people shortly after the body was found that he could give information to the police about the victim but that he did not intend to do so voluntarily. It is also uncontradicted that the police had determined the identity of the victim by the time of Kipps' confinement and had determined

---

2. Granting motion to dismiss for failure to state a claim for which relief can be granted where facts alleged by plaintiff showed that police officers acted upon probable cause.

3. Prosecutorial immunity no bar to suit on claim that prosecutor participated in raid designed to gather evidence.

that the cause of death was a bullet wound. On the basis of Armentrout's statement as partially corroborated by the additional information, it is apparent that the police had probable cause to arrest Kipps for the murder. Their subsequent participation in the prosecution of Kipps was in good faith since that prosecution relied upon the finding by a state judge that sufficient cause existed to bind Kipps over to a grand jury and the indictment of Kipps for murder by that grand jury.[4]

 Kipps' final complaint is that the defendants attempted to deprive him of due process of law by prejudicing his trial through newspaper releases. It is uncontroverted that a picture of Kipps was released to the local press after his arrest and that Keyser and Williams made statements to the press to the effect that Williams had worked very hard on the investigation. It is likewise uncontroverted that the publicity did not prevent Kipps from being acquitted.

Kipps has alleged nothing in support of his claim other than the fact of the release of the facially neutral publicity. The picture showed Kipps standing in front of a brick wall which gave no indication that it could be part of a jail or police office; the shirt Kipps was wearing had no visible markings to indicate that it was anything other than a normal workshirt; and Kipps' hands and wrists were not sufficiently visible for a newspaper reader to determine whether Kipps was handcuffed. The total effect of the picture is that it represents the person who was arrested in connection with the murder. The statements about Williams' hard work did not mention any of the evidence obtained to link Kipps with the murder. Kipps has alleged nothing beyond his claims of bad motive on the part of the defendants to establish that this publici-

ty was anything other than a normal incident of a public trial. These bare charges are no substitute for specific averments. *Cf. Weather v. Ebert, supra,* 505 F.2d 514. Kipps' complaint that the defendants attempted to prejudice his trial thus was properly dismissed.

Accordingly, we dispense with oral argument and affirm the judgment of the district court.

4. Kipps has alleged that, approximately one month after the grand jury returned its indictment, Keyser told Kipps that he did not believe Kipps was guilty. Kipps also has alleged that Keyser told Kipps after the acquittal on the murder charge that there had been no evidence against Kipps. Keyser denied both statements. Taking Kipps' allegations as true, however, they still do not state a cause of action against Keyser since it was not his responsibility to decide whether Kipps should be prosecuted after the grand jury had returned an indictment against him. There is no allegation that Keyser had exculpatory information that should have been brought to the attention of the prosecutor; it is merely alleged that he might have evaluated the existing evidence differently.