[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-13003
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 21, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-61243-CV-KAM

WILLIAM HENRY ROBINSON,

Plaintiff-Appellant,

versus

MICHAEL J. SATZ,
State Attorney,
GERARD WILLIAMS, Assistant
State Attorney,
JIMMIE L. HENDRY, Chairman
of Parole Commission,
M. DAVID, Assistant Chairman
of Parole Commission,
F. B. DUMPHY, Assistant
Chairman of Parole Commission,
SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

**(December 21, 2007)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

William Robinson, a Florida state prisoner proceeding pro se, appeals the district court's dismissal of his complaint, filed pursuant to 42 U.S.C. § 1983, alleging that the defendants, including Florida state attorney Michael Satz and several parole commission and Florida Department of Corrections employees, violated his due process rights by: (1) identifying him on the state of Florida's public website as a sex offender without a prior hearing to determine whether the information was true; and (2) denying him parole based on inaccurate information that he had committed rape, despite never having been charged or convicted of that offense. Robinson sought to have the rape information expunged from his prison record so that it would not continue to be used to prevent him from earning gain-time credits, parole, or work release. He also requested millions of dollars in damages.

Robinson's complaint alleges that on November 30, 1972, he "came upon" a

2

crime in progress, in which a woman was being raped and a dead man was on the ground. Robinson was charged with the murder of the woman, and his defense to the crime was that someone else had both raped and murdered her. He sought to have his bodily fluids tested against those that were found on the victim, but the state attorney told him that the autopsy showed that no rape had occurred. Robinson was convicted of the murder in 1973, but the conviction was reversed in 1988, at which time he was re-indicted for the murder, pleaded guilty, and was sentenced to life imprisonment, with credit for time served. Robinson alleges that he was given a parole date of September 9, 1998, and was approved for work release, but then defendant Satz, "or through his assistant state attorney general Gerard Williams," prepared a report including false information that Robinson had been convicted of rape to influence the parole commission not to grant him either parole or work release.

After he was denied parole, Robinson, proceeding pro se and in forma pauperis, filed suit against Satz, Williams, and several parole commission and Department of Corrections employees. On May 3, 2006, acting pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the district court sua sponte dismissed his complaint for failure to state a claim. Robinson timely appealed, arguing that the false and misleading report regarding the alleged rape, which according to Robinson was

intentionally created by Williams, was being used to:  (1) void the work release that he was granted in 1998; (2) void the gain-time credits he had earned for good work performance throughout his incarceration; and (3) deny him parole.[1] Robinson also contends that he was erroneously identified as a sex offender on Florida's public website.

We "review de novo a district court's sua sponte dismissal for failure to state a claim, pursuant to § 1915(e)(2), using the same standards that govern Federal Rule of Civil Procedure 12(b)(6) dismissals."  Farese v. Scherer, 342 F.3d 1223, 1230 (11th Cir. 2003).  In reviewing a complaint under Fed. R. Civ. P. 12(b)(6), we must accept all facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Moreover, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

Robinson first argues that the defendants revoked some of his privileges,

---

[1] Robinson also devotes a large portion of his brief to challenging his 1988 indictment and conviction for murder, but we will not consider that issue because Robinson failed to argue it before the district court.  See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (holding that an issue raised for the first time on appeal will not be considered by this Court).  Moreover, this argument constitutes a challenge to the validity of Robinson's state conviction, and the proper avenue for this type of relief is through a petition for writ of habeas corpus, not a § 1983 claim.  See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827, 1841 (1973).

such as gain-time credits for good performance and eligibility for work release, based on false information that he had been charged with and convicted of rape. The Supreme Court has held that a prisoner may not use § 1983 to challenge the fact or duration of his confinement. See Preiser, 411 U.S. at 500, 93 S. Ct. at 1841. In Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584 (1997), a prisoner brought a § 1983 claim, alleging that his due process rights were violated because a hearing officer intentionally concealed exculpatory witness statements at his disciplinary hearing, which resulted in the loss of his good-time credits. Id. at 644, 117 S. Ct. at 1587. The Supreme Court concluded that his claim for damages and declaratory relief "necessarily impl[ied] the invalidity of the punishment imposed" because if the Court concluded that the procedures used by the hearing officer violated the prisoner's due process rights, he would be entitled to reinstatement of his good-time credits. Id. at 646–48, 117 S. Ct. at 1588–89. Accordingly, the Court held that the plaintiff's claim was "not cognizable under § 1983." Id. at 648, 117 S. Ct. at 1589.

Later, in Wilkinson v. Dotson, 544 U.S. 74, 125 S. Ct. 1242 (2005), the Supreme Court reviewed its prior holdings in this area and summarized that "a state prisoner's § 1983 action is barred (absent previous invalidation [of his conviction or sentence])—no matter the relief sought (damages or equitable relief),

5

no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81–82, 125 S. Ct. at 1248.

Robinson's complaint does not allege that either his 1988 murder conviction or his life sentence has been invalidated. Robinson's argument regarding work release and gain-time credits, however, "necessarily impl[ies] the invalidity of the punishment imposed" because, as in Edwards, a conclusion that Robinson's due process rights were violated by the parole commission's procedures would mean that he is entitled to a reinstatement of his gain-time credits and work release eligibility status. See Edwards, 520 U.S. at 646–48, 117 S. Ct. at 1588–89. Therefore, this claim is not actionable under § 1983. See id. at 648, 117 S. Ct. at 1589.

Robinson next argues that his due process rights were infringed when he was denied parole based on the parole commission's mistaken belief that he had been charged with and convicted of rape. "The Due Process Clause applies when government action deprives a person of liberty or property." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2103 (1979). In the context of parole, the Supreme Court has held that a convicted prisoner has no

6

constitutional right to be released before the expiration of a valid sentence.  Id. at 7, 99 S. Ct. at 2104.  Accordingly, a parole commission's decision about whether to grant an inmate parole does not automatically invoke due process protection.  Id. A state may create a protectible liberty interest in the establishment of a parole system, see id. at 12, 99 S. Ct. at 2106, but we have held that Florida's parole statutes did not create such a protected liberty interest.  Hunter v. Fla. Parole & Prob. Comm'n, 674 F.2d 847, 848 (11th Cir. 1982).

Even when a prisoner does not have a liberty interest in parole, however, the discretion of the parole board is not unlimited.  Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991).  For example, a parole board cannot rely upon admittedly false information in determining whether to grant parole, and by doing so, the board treats the prisoner "arbitrarily and capriciously in violation of due process." Id.  However, we have held that a prisoner does not state a due process claim simply by making a "conclusory allegation" regarding the use of false information by a parole board.  Jones v. Ray, 279 F.3d 944, 946 (11th Cir. 2001).

Because Florida's parole statutes are discretionary, Robinson has no constitutional right to parole, and due process does not apply to the state's procedures for deciding whether to grant him parole.  See Hunter, 674 F.2d at 848. Moreover, although Robinson alleges that Williams intentionally included false

7

information in the report, he submitted a copy of the report in support of his claim, and it states that Robinson was never charged with rape. Robinson has provided no other information besides his conclusory allegation suggesting that the parole commission relied on false information in denying him parole, and therefore, the district court correctly dismissed his claim on this issue. See Jones, 279 F.3d at 946; see also Monroe, 932 F.2d at 1442 ("[P]risoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.").

Robinson finally argues that his right to due process was violated because he was placed on the Florida sex offender website without notice even though he was never charged with or convicted of any sex offense. The Florida Sex Offender Act defines a sex offender as a person who "has been [c]onvicted of committing, attempting, soliciting, or conspiring to commit" any of the enumerated offenses, including rape. Fla. Stat. § 943.0435(1)(a)(1). Pursuant to this statute, Florida has established a public website, in which each sex offender's name, address, photograph, and offense is listed. See http://offender.fdle.state.fl.us. We have held that "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause." Kirby v. Siegelman, 195 F.3d 1285, 1292 (11th Cir. 1999). Therefore, "[a]n inmate who has never been

convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." Id.

Robinson's complaint alleges that he has never been convicted of a sex crime, and therefore, he should not be identified as a sex offender and posted on the website. Liberally construed, his complaint also alleges that he received no notice that he was going to be identified as a sex offender before he was placed on the website. Based on our holding in Kirby, Robinson was entitled to due process before he was declared a sex offender and identified on the state of Florida's sex offender website. See Kirby, 195 F.3d at 1292. Robinson has therefore stated a valid due process claim, and the district court erred in dismissing his complaint for failure to state a claim on this issue.[2]

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

---

[2] We note that upon review of the Florida sex offender website, we did not see Robinson's name on it. If Robinson has never been identified on the sex offender website, then his claim has no merit and summary judgment would be proper. That fact, if it is a fact, cannot be ascertained from the record as it now stands.